669 A.2d 372

**In re Nalonni Renee DIAZ.**

**Appeal of Yvonne LAVENTURE.**

Superior Court of Pennsylvania.

Submitted Sept. 25, 1995.

Filed Dec. 22, 1995.

328

330

James D. Wolman, Lancaster, for appellant.

Heather J. Mumma, Mount Joy, for appellee.

David E. Alspach, Lancaster, for Children & Youth Services, participating party.

Before CAVANAUGH, BECK and MONTGOMERY, JJ.

CAVANAUGH, Judge:

In 1992, the Lancaster County Children and Youth Social Service Agency (CYS) filed a petition under 23 Pa. Cons.Stat. Ann. § 2511 to terminate the rights of Yvonne Laventure (mother) and William Diaz, also known as William Merced, to their daughter Nalonni Renee Diaz.[1] The trial court entered a decree nisi terminating parental rights. Yvonne Laventure filed exceptions to the decree nisi, which the trial court dismissed. She now appeals from a final decree terminating parental rights. After careful review of the record, we affirm.

Yvonne Laventure had just reached her sixteenth birthday when she gave birth to Nalonni on March 16, 1989. They lived with Ms. Laventure's mother in Lancaster County. On April 7, 1989, CYS took physical custody of Nalonni due to unsafe and unsanitary living conditions in the home. On April 17, 1989, after a hearing, the court adjudicated Nalonni dependent.

On May 4, 1989, CYS approved a placement plan amendment which outlined the prerequisites for Nalonni's return to her mother. The plan required mother to "obtain clean and stable housing, lead a drug free lifestyle, improve her knowledge of child development and parenting skills, and find acceptable caretakers for the child in the mother's absences."

CYS referred mother to drug and alcohol counselling, and education and employment training. CYS further provided transportation assistance, and began efforts to assist mother with housing needs. Mother moved to several locations in Lancaster, Reading and New York between May, 1989 and November, 1992, making visitation more difficult. Lancaster County CYS gave referrals to agencies in New York and Reading, yet mother never followed through with the assistance, nor did she complete the plan.

---

1. William Diaz, Nalonni's father, did not attend any hearings regarding the petition to terminate his parental rights, nor did he challenge the decree nisi. He is not a party on appeal.

Mother's visits with Nalonni decreased over time. The following chart reflects this decrease:

| Time Period | No. visits/No. scheduled |
| --- | --- |
| 5/89 to 10/89 | 11 of 16 |
| 10/89 to 5/90 | 4 of 8 |
| 3/90 to 10/90 | 2 of 7 |
| 10/90 to 3/91 [2] | 1 |
| 3/91 to 9/91 | no contact |
| 9/91 to 11/92 | 1 |

Since March, 1991 the mother has done virtually nothing to parent Nalonni. During the four visits since March, 1990, Nalonni cried and clung to the foster parent or caseworker during the mother's visits, and barely recognized mother.

Appellant presents the following issues for review:

The trial court abused its discretion and erred as a matter of law in involuntarily terminating mother's parental rights because:

1. The agency violated federal law when it failed to render adequate services before removing Nalonni from mother's home.

2. The agency failed to render any services to mother, herself a juvenile, to address the same conditions of neglect which necessitated the removal of the child.

■■■ For cases involving involuntary termination of parental rights, the standard of review is stated in *In re J.W.*, 396 Pa.Super. 379, 387, 578 A.2d 952, 956 (1990), as follows:

In cases where there has been involuntary termination of parental rights our scope of review is limited. We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve

2. Due to mother's failure to attend regular bi-weekly sessions, visits were scheduled only on request at this time.

errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*Id.*

In this case, the trial court entered a decree terminating parental care after finding that the statutory elements were met under § 2511(a)(1), (2) and (5). The relevant portions of the statute provide:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \* \* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the needs and welfare of the child. The rights of a parent

shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa. Cons.Stat.Ann. § 2511.

■ The statute for terminating parental rights outlines certain irreducible minimum requirements which parents must provide for their children. *See In re J.W.*, 396 Pa.Super. 379, 391, 578 A.2d 952, 958 (1990). "The necessary implication of the language in the Juvenile Act is that a parent who cannot or will not meet the irreducible minimum requirements set by the Juvenile Act within a reasonable time following intervention may properly be considered "unfit," and may properly have parental rights terminated." *Id.*

The trial court found that CYS established by clear and convincing evidence that appellant failed to provide this minimal parental care to Nalonni, as required by the statute. Interestingly, appellant concedes that CYS met the statutory burden to terminate parental rights. Appellant, however, contends that CYS caused the conditions necessary to meet the elements of the statute terminating parental rights. She asserts that her own failure to undertake parental duties should be excused in light of CYS's actions.

Specifically, appellant claims that CYS violated federal law by failing to make reasonable efforts to preserve family unity. Appellant bases these claims on the mandate of the Adoption Assistance and Child Welfare Act; 42 U.S.C.A. § 671 (1995). Under this act, a state is eligible for federal matching funds if it has a plan for child welfare services. The state's plan must provide "that, in each case, reasonable efforts will be made (A) prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from his home, and (B) to make it possible for the child to return to his home." 42 U.S.C.A. § 671.

This Court considered the ramifications of this law in a dependency action in *Interest of S.A.D.*, 382 Pa.Super. 166, 168, 555 A.2d 123, 124 (1989), as follows:

Paramount to compliance is the requirement of due process and an appropriate judicial determination that removal of a child from his home was required. 55 Pa.Code § 3130.71(a). Prior to removal is the requirement that the agency make reasonable effort to prevent removal. 62 P.S. 701 *et seq.;* 55 Pa.Code §§ 3130.11, 3130.13, 3130.35–.42. The federal and state law requires periodic court monitoring which is the role of the Juvenile Court, 42 Pa.C.S. § 6351, 55 Pa. Code § 3130.71, and it also involves case plans for services for the child, parents and foster parents (55 Pa.Code § 3130.67) to: (1) improve conditions in the home (§ 3130.–67(6)(7)(8)); and (2) facilitate the child's return home or plan for permanent placement (§ 3130.61–67).

Ultimately, the goal is to rehabilitate the family, reunite the child with his family or, after reasonable efforts over an appropriate period of time have failed, to terminate parental rights and free the child for adoption pursuant to the Adoption Act of 1980, Subchapter B, Involuntary Termination, 23 Pa.C.S. § 2511(a). *Fallaro v. Yeager*, 364 Pa.Super. 408, 422, 528 A.2d 222, 229 (1987).

*Interest of S.A.D.*, 382 Pa.Super. 166, 168, 555 A.2d 123, 124 (1989).

Appellant asserts that CYS failed to render services to prevent Nalonni's placement in a foster home and provided inadequate services to remove the conditions which led to placement. While CYS clearly had a statutory duty to undertake these services, we find that they met this duty.

■ The trial court stated that CYS removed Nalonni due to "unsafe and unsanitary conditions." The record clearly supports this finding, and reflects the following. The Laventure's refused to allow CYS caseworkers to enter their house to investigate complaints about unsanitary conditions. The caseworkers returned with a dependency petition for Nalonni. They discovered six dogs and a rabbit living in the house with Ms. Laventure, her parents and Nalonni. The house was dirty, it smelled of dog feces and at least one window was broken. The three-week old Nalonni was lying on a sofa with

a Chihuahua on her. CYS caseworkers took custody of Nalonni, and she was adjudicated dependant. CYS adopted a plan signed by mother for Nalonni's return. This plan stressed that mother must find suitable housing to regain custody of Nalonni.

The trial court further found that CYS made a good faith effort to assist mother in completing the plan for Nalonni's return. The court summarized the services provided by CYS as follows:

> The agency initially referred mother to drug and alcohol counselling at Human Services and provided LIST tickets to assist her with transportation to these programs.[3] Mother was referred to the Community Action Program for GED classes and employment training. The agency had also begun working on housing options. Mother did not follow through with any of these referrals. The lack of success of these efforts is not attributable to the agency, but resulted from mother's failure to cooperate and her relocation to Reading shortly after the plan was approved.

> Subsequently, the agency referred mother to the Berks Youth Counselling Center in Reading for drug and alcohol counselling and a parenting program. Berks County Children and Youth Services also provided such referrals. Mother refused to attend the recommended drug treatment program and never completed the parenting program. When attempts were being made to have her admitted to an intensive outpatient drug treatment program, mother moved to New York.

> The agency responded to this change in mother's circumstances by contacting the appropriate social service agency in New York regarding drug and alcohol referrals for mother. The latter agency referred mother to an appropriate program which she did not attend. The New York agency also performed an interstate home study of mother's residence at her request.

3. The record reflects that a caseworker brought the tickets to Ms. Laventure's home, but she was not present. Subsequently, CYS offered to reimburse her for transportation expenses.

When mother returned to Lancaster County in 1990, the agency again provided referrals for drug and alcohol treatment. Throughout the period of placement until the time of the filing of the petition for involuntary termination, visits with her child were available to mother. The evidence establishes clearly that despite mother's frequent relocation and refusal to cooperate, the agency has consistently put forth a good faith effort to assist her.

The trial court's findings are supported by the record, and they demonstrate that CYS performed its duty under federal and state law to assist appellant.

 Although we find that CYS properly undertook its duties, we note that any failure by CYS does not justify appellant's continuing neglect of Nalonni. The Commonwealth is not a "guarantor of the success of efforts to help parents assume their parental duties." *In re J.W.*, 396 Pa.Super. 379, 392, 578 A.2d 952, 959 (1990). Clearly, mother had a corresponding duty to use her best efforts to overcome obstacles to perform her parental duties. *In re V.E.*, 417 Pa.Super. 68, 77, 611 A.2d 1267, 1272 (1992) ("[w]here a parent does not exercise reasonable firmness in declining to yield to obstacles,' his [parental] rights may be forfeited").

Moreover, excusing appellant's failure to provide the minimal parental care to Nalonni based on CYS's actions in removing Nalonni six years ago is contrary to the purpose of the statute providing for the termination of parental rights. Discussing the role of the statute, this Court stated:

It is universally agreed that the bond of parental affection is unique and irreplaceable. When parents act in accordance with the natural bonds of parental affection, preservation of the parent-child bond is **prima facie** in the best interest of the child, and the state has no justification to terminate that bond. On the other hand, a court may properly terminate parental bonds which exist **in form** but not **in substance** when preservation of the parental bond would consign a child to an indefinite, unhappy, and unstable future devoid

of the irreducible minimum parental care to which that child is entitled.

\* \* \* \* \* \*

It is important to keep in mind that the essential **needs** of the child and the **responsibilities** of the parent must be considered as well as the **rights** of the parent.

*In re J.W.,* 396 Pa.Super. 379, 391, 578 A.2d 952, 958 (1990).

This Court further discussed the responsibilities of a parent by noting that when a child is placed in foster care, a parent has an affirmative duty to work toward the return of the child. *In re V.E.,* 417 Pa.Super. 68, 76, 611 A.2d 1267, 1271 (1992). Our Supreme Court further stated: "[w]e think this affirmative duty, at a minimum, requires a showing by the parent of a willingness to cooperate with the agency to obtain the rehabilitative service necessary for the performance of parental duties and responsibilities." *In re Adoption of J.J.,* 511 Pa. 590, 602, 515 A.2d 883, 890 (1986).

This affirmative duty also includes the responsibility to maintain communications and continue association with the child. *In re V.E.,* 417 Pa.Super. 68, 76, 611 A.2d 1267, 1271 (1992). "Parental rights may not be preserved . . . by merely waiting for some . . . convenient time for the performance of some parental duties and responsibilities (while others adequately provide the child with [her] immediate and continuing physical and emotional needs)." *In re Adoption of J.J.,* 511 Pa. 590, 603, 515 A.2d 883, 890 (1986) (quoting *Adoption of McCray,* 460 Pa. 210, 217, 331 A.2d 652, 656 (1975)).

The trial court found that mother did not undertake her affirmative duty in parenting Nalonni. In reaching its decision to terminate parental rights, the trial court factored in all circumstances, including "mother's age, her lack of family support, her limited income and lack of convenient transportation, as well as services offered to her which would have allowed her to complete the court approved plan and her response to these offers of assistance." In finding that mother failed to perform her minimal parental duties to Nalonni,

the trial court found most incredible mother's failure to even visit Nalonni in her foster home on a regular basis.

Appellant also attempts to shift blame to CYS for the deterioration of her relationship with Nalonni. She contends that she viewed CYS as an adversary, and that she was afraid that if she visited Nalonni, CYS would take custody of her son. The trial court found this testimony lacking in credibility, and not sufficient to excuse her failure to undertake her parental duties. We agree.

Therefore, we find that CYS did not violate federal and state law in removing Nalonni from her home. Additionally, any failure by CYS does not excuse appellant's continuing neglect of her child, nor does it justify her failure to discharge her duty of affirmative care to her child.

In the second issue, appellant contends that she should have been placed in a foster home with Nalonni. Basically, if the poor housing conditions required CYS to remove Nalonni, they also required CYS to remove mother since she was only sixteen years old. In this way, CYS would have fulfilled its duty to preserve the family unity.

Appellant cites no precedent for this argument, and we find no basis for it. Mother was never adjudicated dependent; and, therefore, was not eligible for foster care. Although conditions were unsafe and unsanitary for Nalonni, a three week old child, the conditions were not necessarily intolerable for a sixteen year old mother.

Appellant's argument, in effect, is that the state should assume custody of the mother and nurture her until such time as she is, in turn, capable of assuming the rule of mother to her child. While the obligations of the state are broad, they do not yet require that the sovereign undertake, in loco parentis, to raise children until they are competent to raise their children.

Finally, as discussed in more detail above, CYS's alleged failure to undertake its duty to preserve family unity cannot at

340

this time excuse appellant's continuous failure to provide the minimal parental care to Nalonni.

Accordingly, we affirm the trial court's Order.

Order affirmed.