# In re D.R.J. and M.L.J.

*Rachel Meaker,* guardian ad litem for D.R.J. and M.L.J.

*Gary S. Fronheiser,* for Father.

KELLER, *J.,* February 14, 2008—This appeal stems from the involuntary termination of the parental rights of the putative father, D.J. (Father and/or appellant) to M.L.J. (d/o/b 10/4/00) and D.R.J. (d/o/b 5/18/05). This family has been involved with Berks County Children and Youth Services (BCCYS) since April 2005, due to unresolved issues of substance abuse, domestic violence, lack of parenting skills, and inappropriate, unsafe housing. Father has consistently lived in Yonkers, New York, throughout these proceedings. The petitions for involuntary termination of parental rights to D.R.J. were filed by BCCYS on March 23, 2007 and for M.L.J. on July 6, 2007. Both petitions alleged grounds for termination under 23 Pa.C.S. §2511(a)(1)(2)(5)(8). On December 17, 2007, this court found that the facts alleged in the petition for involuntary termination of parental rights had been established by clear and convincing evidence and signed final decrees forever terminating all parental rights and duties to the above referenced children. Father, by and through his court-appointed counsel Gary S. Fronheiser, Esquire, filed a timely notice of appeal on January 2, 2008. On January 4, 2008, this court entered an order directing Father to file a concise statement of errors complained of on appeal within 21 days in accordance with Pa.R.A.P. 1925(b). Father's timely concise statement was filed by his attorney on January 22, 2008 and raises the following issues:

(1) The evidence presented at the hearing of December 17, 2007 was insufficient to terminate appellant's parental rights.

(2) The best interests of the children were not served by terminating appellant's parental rights.

(3) Berks County Children and Youth Services did not provide sufficient services to appellant to enable him to correct any deficiencies that the court may have found prevented appellant from being a good parent.

(4) Appellant participated in services that he secured on his own, which he believed were in compliance with the court-ordered services.

(5) Berks County Children and Youth Services and this honorable court did not allow sufficient visitation between appellant and his children, thereby undermining any relationship between appellant and his children.

The first issue raised in Father's concise statement alleges that the evidence presented at the hearing of December 17, 2007 was insufficient to terminate his parental rights. We acknowledge that the proceedings on December 17, 2007 were very brief. They were brief because neither Mother nor Father appeared. The following exchange took place on the record at the time and date assigned to the hearing:

"Mr. Fronheiser: I have no objection to the admission of those exhibits. I did speak with my client this morning. He was actually physically here. I saw him at the Children Services office this morning at 10 a.m., and he said that he was coming for the hearing. I did tell him to meet me there at 1 p.m., he did not appear. And I left word at the receptionsist's desk over there that they should tell him,

if he did appear, to come over here. He has not appeared. But I do not have any objection to those exhibits. . . .

"The Court: All right. The record will reflect that neither Ms. Rivera nor Darren Jones has appeared. And we purposely waited until at least 1:45. Ms. Meaker, you're here as guardian ad litem?

"Ms. Meaker: Yeah. I have no objections to the exhibits, your honor. And I'm in agreement that it's in the best interests of these children that the parental rights be terminated.

"The Court: All right.

"Mr. Fronheiser: I have something else. I know that my client was opposing the termination. And he did give me some five exhibits, which I have shown to opposing counsel stating that he attended certain classes and completed some counseling. And I would be asking—I believe that there is an agreement that they would be admitted on his behalf. . . .

"(Whereupon, the proceedings were concluded at 1:48 p.m.)" (N.T. 12/17/07, pp. 7-9.)

This court waited nearly 20 minutes past the time the hearing was to commence before signing the final decrees. The appellant was properly served with notice of the time, date and location of the hearing and he had counsel appointed for him, who further instructed appellant where to be. This court gave appellant ample time to appear for the hearing before determining, in reliance upon previous permanency hearings and information contained in the exhibits, that there was clear and convincing evidence to support the termination of Father's parental rights.

Appellant next argues in his concise statement that the termination of his parental rights was not in the best interest of the children. The law is very clear and unambiguous when dealing with the involuntary termination of parental rights, and the statute outlines certain inflexible minimum requirements which parents must provide for their children. The rights of a parent in regard to a child may be terminated after a petition filed when the child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child. 23 Pa.C.S. §2511(a)(5). They may also be terminated when the child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which lead to the removal or placement of the child continue to exist and termination of parental rights would be in the best interest of the children. 23 Pa.C.S. §2511(a)(8). The children in this case were under the custody and care of BCCYS due to both Mother and Father's unresolved issues with drug abuse, domestic violence, inappropriate and unsuitable housing and lack of parenting skills. The exhibits overwhelmingly show that appellant, Father,

had not remedied the conditions that necessitated the placement, and termination of his parental rights would be in the best interest of the children. It is well settled that the court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. D.R.J. was born approximately two months premature and weighed only two pounds at birth. He spent several weeks in the neonatal intensive care unit at the Reading Hospital and Medical Center and Penn State Children's Hospital. As a result of his lack of prenatal care, Mother's drug use while pregnant and his premature birth, D.R.J. is medically fragile and was placed in the care and custody of BCCYS upon his release from the hospital at six weeks of age. He has the following diagnoses: (1) cerebral palsy; (2) fetal alcohol effect syndrome; (3) pulmonary dysplasia; (4) chronic rhinitis and allergies; (5) gastric reflux; (6) lower limb discrepancy; and (7) hypertonia. He has made a positive adjustment to his specialized medically fragile foster home, where he has resided since placement. He is happy, content and attached to the foster family. He is thriving, and making progress in his delays, due to the consistent specialized care that the foster parents are able to provide. (N.T. 12/17/07, exhibits 75 and 76.) M.L.J. has been a dependent child since July 20, 2005 and has been in foster care placement continuously since December 13, 2006. She receives individual therapy on a biweekly basis and has a pleasant affect, relates well to her provider family and caseworker, and has no health issues. *(Id.)* As noted above, the guardian ad litem for the children, Rachel Meaker, Esquire, testified at the hearing that she believed

it was in the best interest of the children that both Mother and Father's parental rights be terminated. This court, too, believes that the children are receiving the love, attention, specialized care and stability they deserve with their foster families, that Mother and Father have not been able to provide, and therefore termination of their parental rights were in the best interests of the children.

Appellant's third issue in his concise statement alleges that BCCYS did not provide sufficient services to appellant to enable him to correct any deficiencies that this court may have found prevented appellant from being a good father. The Juvenile Act authorizes state agencies and the courts to ensure that parents meet certain legislatively determined irreducible minimum standards in executing their parental rights. Where, as here, the child has been removed from the parental home and placed in foster care, the parents have an affirmative duty to work toward the return of their children. *In re V.E.,* 417 Pa. Super. 68, 76, 611 A.2d 1267, 1271 (1992). At a minimum, that "affirmative duty" requires the parent to show a willingness to cooperate with CYS to obtain the rehabilitative services necessary to enable the parent to meet the duties and obligations inherent in parenthood. *Id.*

Appellant argues that BCCYS did not provide him with the necessary services to enable him to correct any deficiencies they believed prevented him from being a good father. Before filing a petition for termination of parental rights, the Commonwealth is required to make reasonable efforts to promote reunification of parent and child. *In re Adoption of M.E.P.,* 825 A.2d 1266, 1276 (Pa. Super. 2003). However, the Commonwealth does not

have an obligation to make such efforts indefinitely. As noted previously, these children came under the care of BCCYS due to issues of drug abuse, domestic violence, lack of parenting skills and inappropriate housing. Father's whereabouts were unknown when the children were first placed. After appellant appeared, an appropriate plan for needed services was developed, which included drug/alcohol evaluation and random urinalysis, domestic violence counseling, casework services and the duty to provide BCCYS with any changes in residence and income. BCCYS offered Father casework services on a monthly basis. During the first dependency review period, Father participated in one casework session on December 2, 2005, after the agency had sent six letters between July 18, 2005 and November 17, 2005, inviting him to contact the agency with any questions or concerns. (N.T. 12/17/07 exhibit 76, p. 6.) Father had an intake evaluation with Berks Advocates Against Violence (B.A.A.V.) on December 20, 2005, at which time it was recommended that he participate in the Men's C.H.O.I.C.E.S. program on a weekly basis for 26 weeks, which would help him develop the skills necessary to foster a safe environment for his family. (N.T. 12/17/07 exhibit 16, p. 2.) His quarterly report indicated that his attendance had been sporadic, and the domestic violence specialist reported that "even though he feels he is learning new skills of parenting, he has not been responsible to find shelter and support for this family. He continues to experience frustration with the Children and Youth Services system and has a hard time redirecting this attention on himself and do everything it takes to get his children out of placement." (N.T. 12/17/07 exhibit 30,

p. 2.) During the second dependency review hearing, Father participated in five out of six casework sessions, the focus of which were to encourage him to further participate in services, as he was not participating in any services in New York. (N.T. 12/17/07 exhibit 76, p. 10.) Despite the recommended/offered services, Father "participated sporadically in domestic violence treatment, was non-compliant with random urinalysis testing, was irregular in attending visitation, and was non-compliant with drug and alcohol treatment after testing positive for marijuana and cocaine in the two urine screens he did complete." (N.T. 12/17/07 exhibit 45, p. 2.) The Commonwealth has an interest not only in family reunification but also in each child's right to a stable, safe, and healthy environment, and the two interests must both be considered. *Id.* A parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the parent's failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment. *In re B.L.W.,* 843 A.2d 380, 388 (Pa. Super. 2004) (en banc), *appeal denied,* 581 Pa. 668, 863 A.2d 1141 (2004). The appellant cannot blame BCCYS for failing to provide him with enough services. Even when the services were offered on an as-requested basis, Father did not avail himself of them. Services were offered until appellant had proven that he was unwilling or unable to comply with them, at which time he was determined to no longer be a viable option as a return resource for the children.

The fourth issue raised in appellant's concise statement alleges that he participated in services he secured on his

own, which he believed to be in compliance with the court-ordered services. Appellant's counsel submitted five items on his behalf at the termination hearing on December 17, 2007 which were collectively marked as exhibit no. 77. Appellant's exhibits included a certificate of completion for an anger management class signed on April 13, 2007. There was also an unsigned letter from Steven Payne, CASAC, dated June 4, 2007, indicating appellant was assessed at New Focus on February 20, 2007, and that he "has excellent attendance, participates in all aspects of treatment and has maintained abstinence from all mood altering chemical." (N.T. 12/17/07 exhibit 77, p. 2.) There was also a letter from Mr. Payne dated December 3, 2007, on Riverside Hospital letterhead, indicating that Father had been receiving services at The New Focus Center's Alcoholism Component from February 16, 2007 until the present and Father had been assessed for treatment services. Recommended treatment services are/were "Day rehab 5x days a week 9-1 p.m. Client has been participating in all groups and is working toward his goals. Client has excellent attendance and is maintaining abstinence." (*Id.* at p. 4.) While these exhibits on their face appear to support appellant's contentions that he participated in services he secured on his own, several of the exhibits submitted by BCCYS contradict these assertions. Random urinalysis was requested of appellant by BCCYS on 12/31/06, 3/8/07 and 6/5/07, and he refused to provide a sample on 12/31/06 and 3/8/07. Appellant submitted to an ONTRAK Urinalysis on June 5, 2007 by the Berks County Juvenile Probation Office and tested positive for marijuana. (N.T. 12/17/07 exhibit 69.)

Appellant's drug use was not the sole reason the children were in placement, and that he was not an appropriate return resource for M.L.J. and D.R.J. The exhibits submitted by appellant's counsel were devoid of any indication that appellant had secured appropriate housing for the children. However, the Westchester County Department of Social Services did a home study of appellant's apartment pursuant to the Interstate Compact on the Placement of Children in February 2006 and was denied placement of M.L.J. due to a number of issues related to his unsuitability. (N.T. 12/17/07 exhibit 61, p. 1.) He was re-evaluated through a home study on February 15, 2007, and placement of M.L.J. with appellant again was not recommended because his situation had not improved.

"*Residence*

"Mr. Jones moved to a basement 'studio' in the same building he was living in last year when the original home study was done. This apartment is one room with no windows or kitchen. There is a double bed, single bed, one chair, television, portable closet, microwave oven and refrigerator. The floor is concrete, pipes and wires are exposed and a space heater heats the room. There is an unfinished bathroom with exposed pipes but functioning toilet, sink and stall shower. Tiles need to be installed. To enter this apartment, it is necessary to walk through an enclosed garage where cars are repaired. There are tools, machines, flammable substances, etc. The apartment had a strong smell of oil, which Mr. Jones said is not from the auto garage, but rather from the oil burner that heats the building. This oil burner is located in the basement near the apartment. The unsuitability of this

apartment was discussed with Mr. Jones. He said he would be willing to ask the landlord if he could have the next available apartment in the building.

"*Drug abuse issues*

"As of the last home study, Mr. Jones admitted that he was still smoking marijuana. Mr. Jones now states that he stopped smoking marijuana in January 2007, a little over two months ago. He states that he was only smoking 'two blunts' a day. He has not been drug-tested, nor has he gone for drug rehabilitation services.

"*Summary*

"D.J. is seeking custody of his daughter M.J., in foster care in Pennsylvania. A home study done 2/16/06 did not find him to be a suitable resource. One year later, Mr. Jones' situation has not improved. He lives in inadequate and dangerous living quarters. He does not have adequate income. He has not received services to address drug abuse issues, nor has he sought parenting classes. It should be noted that Mr. Jones loves his daughter but does not appear to have the emotional strength necessary to take the steps to regain custody." (N.T. 12/17/07, exhibit 61.)

The court, in terminating the rights of a parent, shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. 23 Pa.C.S. §2511(b). The necessary implication of the language in the Juvenile Act is that a parent who cannot or will not meet the irreducible requirements set by the Juvenile Act within a reasonable period of time following intervention may properly be considered "unfit," and may properly have parental rights terminated. *In*

*re Diaz,* 447 Pa. Super. 327, 333, 669 A.2d 372, 375 (1995). It is clear that for more than one year following the removal and placement of M.L.J. and D.R.J., the conditions which necessitated that removal and placement still exist with regards to appellant. Appellant has not satisfactorily complied with either the services recommended by BCCYS or the ones he secured on his own, and has shown either an unwillingness or an inability to remediate these conditions within a reasonable amount of time.

Appellant alleges in the final issue raised in his concise statement that BCCYS and this court did not allow sufficient visitation between appellant and his children, thereby undermining the relationship appellant had with the children. During the first dependency review period, BCCYS had no contact with appellant from July 8, 2005 until November 17, 2005 when his then-attorney contacted BCCYS and requested services be provided to Father. Father met with the BCCYS caseworker on December 5, 2005, when he tested positive for cocaine and marijuana on that date. Also on that date, M.L.J. had severe reactions to seeing Father and refused to visit with him. (N.T. 12/17/07 exhibit 24, p. 9.) On January 23, 2006, this court concluded that the children remained dependent and custody remained with BCCYS for placement with the goal of return to most appropriate parent. Father was ordered to cooperate with the agency in planning for the child and to participate in all recommended services including but not limited to drug and alcohol evaluation and any recommended treatment, parenting education, domestic violence evaluation and any recommended counseling and casework sessions.

During the second dependency review period, Father was offered weekly supervised visits but participated in only 11 out of the 17 sessions. (N.T, 12/17/07 exhibit 37, p. 9.) At the end of that review period, it was determined that the children remained dependent and their placement was to continue with the goal of return to Mother. It was recommended that the parents participate in the following services if they wished to present as a return resource for the children: (a) parenting education; (b) drug and alcohol treatment; (c) random urinalysis; (d) mental health treatment; (e) visitation with the child; and (f) domestic violence counseling. On July 17, 2006, during the third dependency review period, appellant was sent a letter by his BCCYS caseworker informing him that his visits would be reduced from weekly to twice a month due to his lack of participation in services and his not being considered as a return resource for the children. (N.T. 12/17/07 exhibit 53, p. 1.) Father subsequently missed a scheduled visit on October 12, 2006, which was rescheduled for October 26, 2006, and again appellant failed to attend on that date. (*Id.* at pp. 2-3.) When appellant did attend the supervised visits, he often ignored the suggestions made by the supervisors and was not always effective at setting limits, particularly with M.L.J. (N.T. 12/17/07 exhibit 54.) At the end of the third dependency period, the new goal with regard to D.R.J. was termination of parental rights/ adoption. Appellant's attendance during scheduled visits was even more sporadic after BCCYS discontinued paying for his bus transportation and his appropriateness during the visits was inconsistent. (N.T. 12/17/08, exhibit 76, p. 21.) Petitions for termination of parental rights were filed relevant to D.R.J. during the fourth dependency review period and M.L.J. remained a dependent

child with a primary goal of adoption and a concurrent goal of return to Father.

It is universally agreed that the bond of parental affection is unique and irreplaceable. When parents act in accordance with the natural bonds of parental affection, preservation of the parent-child bond is prima facie in the best interest of the child, and the state has no justification to terminate that bond. *In re J.W.,* 396 Pa. Super. 379, 391, 578 A.2d 952, 958 (1990). On the other hand, a court may properly terminate parental bonds which exist *in form* but not *in substance* when preservation of the parental bond would consign a child to an indefinite, unhappy and unstable future devoid of the irreducible minimum parental care to which that child is entitled. *Id.* It is important to keep in mind that the essential *needs* of the child and the *responsibilities* of the parent must be considered as well as the *rights* of the parents. *Id.* In this case, the children were removed from the parents' care due to unresolved issues of substance abuse, domestic violence, lack of parenting skills, and inappropriate, unsafe housing. Aside from the visitations, Father did not fully comply with any services to remedy the conditions which caused the children to be in placement. Although appellant undoubtedly loves his children, he has a responsibility to provide them with a safe and stable living environment and he has not made the significant strides necessary to ensure that they will have the safety and stability they deserve.

For all of the foregoing reasons, this court respectfully requests that Father's appeal be denied and the decree terminating his parental rights to M.L.J. and D.R.J. be affirmed.