J-S62001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: J.E.R. A/K/A J.E.T, A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.M.R. N/B/M A.T. | No. 511 MDA 2016 |

Appeal from the Decree February 24, 2016
in the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 36-2015-1410

BEFORE:  GANTMAN, P.J.; DUBOW, J.; and JENKINS, J.

MEMORANDUM BY JENKINS, J.                    **FILED SEPTEMBER 22, 2016**

Appellant A.M.R. ("Mother") appeals from the February 24, 2016 decree involuntarily terminating her parental rights to J.E.R. a/k/a J.E.T. (born November of 2013) ("Child").[1]  We affirm.[2]

Child lived with Mother for the first month of Child's life.  Lancaster County Children and Youth Social Service Agency ("CYS") became involved with the family when it received reports that Child was not dressed properly for the cold weather and Mother was unable to sufficiently bathe, feed, or care for Child because of Mother's cognitive deficits.  On December 27,

_____

[1] Mother has two other children who are not involved in this appeal.

[2] The birth father of Child is unknown and several potential fathers have been excluded by DNA testing.

2013, Child was seen by a medical provider, who reported that Child had dropped thirteen ounces since her birth. The medical provider voiced concerns regarding Mother's ability to care for Child's basic daily needs.

Child was removed from Mother's care on January 2, 2014. The trial court held a Shelter Care hearing on March 11, 2014. On April 8, 2014, the trial court adjudicated Child dependent and approved a Child Permanency Plan ("CPP") with the primary goal of reunification. Mother's CPP objectives included: (1) to improve mental health functioning; (2) to learn and use good parenting skills; (3) to be financially stable in order to provide for Child; (4) to maintain housing; and (5) to maintain an ongoing commitment to Child.

CYS filed a petition for involuntary termination of parental rights on June 22, 2015. The trial court held a hearing on December 15, 2015.[3] The trial court heard testimony from Sherri Curtis, a social worker at Bethanna; C.T., Mother's husband;[4] and Mother. The trial court also considered a parenting capacity re-assessment, prepared by Dr. Jonathan M. Gransee, a licensed psychologist ("Exhibit 2"), and a personalized parent trainer ("PPT") court report prepared by Nina Sypolt, a CYS caseworker ("Exhibit 3"). On

---

[3] The hearing on the petition to involuntarily terminate Mother's parental rights was originally scheduled for August 18, 2015, and was continued to October 20, 2015, then to November 17, 2015, and then again continued to December 15, 2015.

[4] Mother and C.T. were not married at the time of Child's birth.

February 24, 2016, the trial court entered a decree granting the involuntary termination of Mother's parental rights.

On March 28, 2016, Mother timely filed a notice of appeal together with a concise statement of errors complained of on appeal filed pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[5]

Mother raises three questions on appeal:

1. Whether the [trial] court erred by terminating Mother's parental rights where [CYS] had deemed Mother's housing to be acceptable, [C.T.] was an appropriate caretaker, and she had child care in place for the periods of time [C.T.] worked?

2. Whether the [trial] court erred by failing to allow Mother reasonable accommodations in completing her [CPP]?

3. Whether the [trial] court abused its discretion by terminating Mother's parental rights when Child had a bond with Mother and there was insufficient evidence [presented] to determine if the termination of the relationship with Mother would harm Child?

Mother's Brief at 4.

Our standard of review regarding orders terminating parental rights is as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary

---

[5] The thirtieth day following the termination order was March 26, 2016, which was Good Friday, a court holiday. Thus, the last day for filing a notice of appeal was Monday, March 28, 2016. *See* 1 Pa.C.S. § 1908 (when filing date falls on a Saturday, Sunday, or holiday, the final date extends to the next business day).

support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005) (quoting *In re C.S.*, 761 A.2d 1197, 1199 (Pa. Super. 2000)). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *Id.* at 806. We have previously stated the standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (quoting *In re Diaz*, 669 A.2d 372, 375 (Pa. Super. 1995)). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003) (quoting *In re: N.C., N.E.C.*, 763 A.2d 913, 917 (Pa. Super. 2000)).

In terminating Mother's parental rights, the trial court relied upon Sections 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> …
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
>
> …
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary

agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

We need only agree with the trial court's decision as to any one subsection of 23 Pa.C.S. § 2511(a) in order to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004).

Here, we focus on Section 2511(a)(8). With respect to Section 2511(a)(8), CYS must show that: (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and

welfare of the child. ***In re Adoption of M.E.P.***, 825 A.2d 1266 (Pa. Super. 2003).

The first element of Section 2511(a)(8) has been met. Child has been in the physical care of CYS since January 2, 2014, and legal custody of CYS since April 8, 2014. By the conclusion of the termination proceedings, Child had been in CYS custody for approximately 24 months.

We now examine the second element of Section 2511(a)(8), whether the conditions that led to Child's placement continue to exist. Child was removed from Mother's care by CYS due to concerns related to Mother's ability to care for Child. The trial court concluded that Mother has failed to complete her CPP goals for reunification, despite Mother's testimony that she has tried her best to develop the skills necessary to parent Child.

Mother argues that, while she has some degree of mental limitations which affect her parenting, she demonstrated that she meets the minimal levels necessary to parent Child. Mother's Brief at 9. The trial court opined that:

> [t]he issue has never been Mother's desire to care for [Child] nor has it been that Mother is not dedicating herself to getting [Child] returned to her care. The problem is not one of compliance but rather progress. [Child] suffers from a medical condition that will necessitate occupational therapy services for the foreseeable future and physical therapy services for the rest of [Child's] life. The [trial c]ourt does not doubt that Mother, at least at times, has tried her best to be reunified with [Child]. However, [CYS] has proved by clear and convincing evidence that Mother's best efforts fail to meet [Child's] ongoing medical needs and care. Despite Mother's earnest attempts at

completing her plan for reunification, the successful completion of her plan is not in the foreseeable future.

Trial Court Opinion, 2/24/16, at 8.

Bethanna social worker Sherri Curtis testified that, while Mother was consistent about attending every visit and was interested in receiving feedback from Child's foster parents which she incorporated into her visits with Child, Mother had trouble staying focused and was inattentive at times. N.T., 12/15/15 at 8-9, 17-18. Ms. Curtis further testified that Mother was easily distracted during her visits with Child. *Id.* at 18-19. Ms. Curtis concluded that Mother would have difficulties caring for Child over a 24-hour period. *Id.* at 23.

In the PPT Report, Ms. Sypolt notes that Mother must consistently be prompted by the PPT or the social worker to meet the needs of Child. Exhibit 3 at 2 (unpaginated). Ms. Sypolt further states in her report that Mother has been unable to obtain appropriate housing, which has forced PPT services to be put on hold. *Id.*

As to the third prong of Section 2511(a)(8), whether the termination of parental rights would best serve the needs and welfare of the child, we find that clear and convincing evidence supports the conclusion that termination of parental rights best serves the needs and welfare of Child. Our review of the record reveals that the trial court concluded that Mother is unable to properly parent and care for Child, and that after carefully considering the tangible dimensions as well as the intangible dimensions – the love, comfort, security and stability entailed in a parent-child relationship

– Child is receiving love, comfort, security, and safety from her foster parents, and that staying with foster parents would best serve the Child's needs and welfare. Trial Court Opinion, 2/24/16, at 9-11.

After our careful review of the record in this matter, we find that the trial court's credibility and weight determinations are supported by competent evidence in the record. *In re M.G.*, 855 A.2d at 73-74. Accordingly, we find that the trial court's determinations regarding section 2511(a)(8) are supported by sufficient, competent evidence in the record.

The trial court must also consider how terminating Mother's parental rights would affect the needs and welfare of Child pursuant to 23 Pa.C.S. § 2511(b). Pursuant to section 2511(b), the trial court's inquiry is specifically directed to a consideration of whether termination of parental rights would best serve the developmental, physical and emotional needs of the child. *See In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005), *appeal denied*, 587 Pa. 705, 897 A.2d 1183 (2006). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). We have instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *See id*.

Mother argues that the trial court ignored testimony of Mother's "nurturing nature and her attachment of [Child]." Mother's Brief at 10. The

trial court stated that it was "persuaded that the termination of Mother's parental rights was in the best interest of [Child] and that the effect of that termination will not be harmful to [Child's] well-being." Trial Court Opinion, 2/24/16, at 10. In reaching this conclusion, the trial court relied on the testimony of Ms. Curtis. At the hearing, Ms. Curtis testified that Child would smile at Mother during visits, but did not exhibit a lot of emotion. N.T., 12/15/15 at 12. Ms. Curtis further stated that Child was not affectionate to Mother, and that Child never referred to Mother as "mom" during the visits. *Id*. at 12-13. Additionally, Ms. Curtis testified that Child was not upset at leaving Mother at the conclusion of any of the visits. *Id*. at 24.

In the instant case, on the issue of bonding, our review of the record reveals no evidence of a bond between Mother and Child. The trial court found Child's bond with Mother is "minimal at best." Trial Court Opinion, 2/24/16, at 10. Furthermore, the trial court states that terminating Mother's parental rights will not destroy an existing, necessary, or beneficial relationship. *Id*. We have stated, "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008).

After this Court's careful review of the record, we find that the competent evidence in the record supports the trial court's determination that there was no bond between Mother and Child which, if severed, would be detrimental to Child, and that the termination of Mother's parental rights

would best serve the needs and welfare of Child.  Thus, we will not disturb the trial court's determinations.  ***See In re M.G.***, 855 A.2d at 73-74.

After a careful review, we affirm the decree terminating Mother's parental rights on the basis of Section 2511(a)(8) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/22/2016</u>