J-S50019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.S.-A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 750 EDA 2017 |

Appeal from the Order Entered February 21, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-DP-0002122-2016

BEFORE:   PANELLA, MOULTON, and RANSOM, JJ.

MEMORANDUM BY MOULTON, J.:            **FILED OCTOBER 10, 2017**

L.A. ("Mother") appeals from the February 21, 2017 orders entered in the Philadelphia County Court of Common Pleas granting the petition of the Philadelphia Department of Human Services ("DHS") and adjudicating L.S.-A. ("Child") dependent pursuant to 42 Pa.C.S. § 6302, and finding aggravated circumstances.[1]  We affirm.

The trial court summarized the procedural and factual history as follows:

> [L.S.-A] was born [i]n March [] 2016.
>
> On September 15, 2016, DHS received a General Protective Services (GPS) report alleging that [C]hild,

---

[1] Father has filed a separate appeal at Superior Court Docket No. 686 EDA 2017, which we address by separate Memorandum.

L.S.[-A.,] was taken to Saint Christopher's Hospital for Children (SCHC) with multiple injuries. Injuries to the child included: multi-layer retin[a]l hemorrhages, acute subdural hematoma, unexplained brain bleeding and a frenulum tear between his gums and lip believed to be caused by an inflicted injury of abusive head trauma.

On September 16, 2016, DHS learned that the mother had had her parental rights terminated as to the child's, L.S.[-A.]'s[,] three siblings.

On September 27, 2016[,] the child was scheduled to be released from the hospital. DHS obtained an Order of Protective Custody (OPC) for L.S.[-A.][2] L.S.[-A.] was placed in a foster home through the Bethanna Agency.

On September 30, 2016, a shelter care hearing was held before the Honorable Vincent W. Furlong. Judge Furlong lifted the OPC and ordered the temporary commitment of L.S.[-A.] to the care and custody of DHS.

Trial Court Opinion, 3/27/17, at 1-2 (unpaginated) ("1925(a) Op.").

On October 4, 2016, DHS filed a dependency petition. The trial court conducted an adjudicatory hearing on January 3, 2017 and February 10, 2017. DHS presented the testimony of Shanequa Lewis, DHS intake investigative worker; Dr. Maria McColgan, child abuse pediatrician; L.A., maternal uncle; D.E.1, maternal uncle's paramour; D.E.2, paramour's mother;[3] and Melanie Davis, DHS intern.[4] Mother and Father were present

_____

[2] In its dependency order, the trial court based its findings of fact on the dependency petition. Order of Adjudication and Disposition, 2/21/17. The DHS petition states that Child was released and an OPC was obtained on September 27, 2016. At the hearing, Ms. Lewis stated that this occurred on September 26, 2016. N.T., 1/3/17, at 39.

[3] L.A., D.E.1, and D.E.2 resided together.

and represented by counsel, but did not testify or present evidence. At the conclusion of the hearing on February 10, 2017, subsequent to argument, the court held its decision under advisement. Thereafter, by order entered February 21, 2017, the court adjudicated Child dependent pursuant to 42 Pa.C.S. § 6302 as a child "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." Order of Adjudication and Disposition – Child Dependent, 2/21/17; **see also** 42 Pa.C.S. § 6302 (definition of dependent child paragraph (1)). Further, by separate order also entered February 21, 2017, the court found aggravated circumstances, finding that "Child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated neglect by the parent; proven as to Mother and Father."[5, 6]

---

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[4] DHS also called Kina Sapp, the community umbrella agency case manager to testify. Father and Mother objected, as her testimony was irrelevant to the adjudication hearing. N.T., 2/10/17, at 91-92. The trial court sustained the objection and informed DHS it could recall Ms. Sapp at later proceedings if Child was adjudicated dependent. **Id.** at 92-93.

[5] The trial court does not reference the prior terminations of parental rights as to Mother in its aggravated circumstances order. Aggravated Circumstances Order, 2/21/17.

[6] Despite a finding of aggravated circumstances, the court ordered that efforts were to continue to be made towards reunification. Aggravated Circumstances Order, 2/21/17.

Aggravated Circumstances Order, 2/21/17; **see** 42 Pa.C.S. §6302 (defining "aggravated circumstances" paragraph (2)).[7]

On February 27, 2017, Mother filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed its opinion pursuant to Pa.R.A.P. 1925(a) on March 27, 2017.[8]

Mother raises the following issues for our review: (1) "The Trial Court erred in that it failed to address inconsistency in the statements of witnesses in assessing credibility"; (2) "[t]he Trial Court opinion cited a circumstance in determining aggravated circumstances which was not cited in the notice to the Appellant, violating due process"; (3) "[t]he Trial Court erred in

_____

[7] The court's orders finding Child dependent and finding aggravated circumstances did not include a finding of "child abuse" pursuant to 23 Pa.C.S. § 6303(b.1). Although the trial court stated at the hearing that it found "child abuse" existed, N.T., 2/21/17, at 5, the court did not include a finding of child abuse under section 6303 in either its adjudication order or its aggravated circumstances order. Order of Adjudication and Disposition – Child Dependent, 2/21/17. Rather, the trial court found "physical abuse" as an aggravating circumstance under section 6302. The parties in their briefs and the trial court in its Rule 1925(a) opinion discuss section 6303. However, because the trial court did not include a finding of child abuse under section 6303 in its final orders, any challenge to such a finding cannot be addressed on appeal. **See** Pa.R.A.P. 341 (an appeal may be taken from an order entered as a final order).

[8] The trial court addressed both Mother's and Father's appeals in the same opinion.

adjudicating the child Dependent in that the basis for the adjudication was the incorrect determination of child abuse." Mother's Br. at 1, 5.[9]

Counsel for Child argues that Mother's appeal should be quashed and/or dismissed for its substantial defects.

We have held that an appeal may be dismissed and/or quashed where the deficiencies of the appellant's brief are such that we are unable to conduct a meaningful review. *Karn v. Quick & Reilly, Incorp.*, 912 A.2d 329, 335 (Pa.Super. 2006); *Branch Banking & Tr. v. Gesiorski*, 904 A.2d 939, 943 (Pa.Super. 2006); *Commonwealth v. Maris*, 629 A.2d 1014, 1017 (Pa.Super. 1993). Mother's brief contains only an Argument section. It does not include a statement of jurisdiction, order or other determination in question, statement of either the scope of review or the standard of review, statement of the questions involved, statement of the case, or summary of argument as required by Pennsylvania Rule of Appellate Procedure 2111. Nevertheless, such defects in Mother's brief, while serious, do not hamper meaningful review. Despite failure to follow the appropriate format and contain all of the appropriate sections and information, Mother's arguments on appeal are readily discernible. As we find Mother's arguments comprehensible, we decline to dismiss and/or quash Mother's appeal.

---

[9] Mother's brief fails to contain a "statement of questions involved" section. Her brief, however includes an argument section setting forth the issues raised.

We, therefore, turn to the merits and address Mother's challenge to the trial court's findings of dependency and aggravated circumstances.

Our standard of review for dependency cases is as follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citations omitted); *see also In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). "The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (quoting *In re Diaz*, 669 A.2d 372, 375 (Pa.Super. 1995)).

Mother argues that "the trial court failed to address discrepancies in the testimony of key witnesses. Therefore, dependency was not determined by clear and convincing evidence." Mother's Br. at 5.[10] We disagree.

This Court has stated:

_____

[10] Mother references conflicting testimony between maternal uncle, uncle's paramour, and paramour's mother. Mother's Br. at 4 ("[D.E.1] testified that she was holding the child, L.S.-A., from the time she went into his room because of his crying until she passed him to her paramour so she could dial 911. However, her mother testified, that when she went into the bedroom and told her daughter to call 911, the child was actually in bed and not being held by [D.E.1]. The paramour, L.A. further complicated matters by referring to what occurred as an accident.").

[T]o adjudicate a child dependent, a trial court must determine, by clear and convincing evidence, that the child:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

42 Pa.C.S.[] § 6302. "Clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re C.R.S.,* 696 A.2d 840, 843 (Pa.Super. 1997) (citation omitted).

In accordance with the overarching purpose of the Juvenile Act "[t]o preserve the unity of the family wherever possible," *see* 42 Pa.C.S.[] § 6301(b)(1), "a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available." *In re R.T.,* [] 592 A.2d 55, 57 ([Pa.Super.] 1991) (citation omitted). This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *In re C.R.S., supra* at 845 (citation omitted).

*In re A.B.*, 63 A.3d 345, 349 (Pa.Super. 2013).

In adjudicating Child dependent, the trial court concluded:

In the instant case, Dr. Maria McColgan, an expert in child protection and child abuse, testified that she examined L.S.[-A.] at SCHC on September 16, 2016. L.S.[-A.] was five months old. Dr. McColgan observed that the child was agitated and fussy. He had a frenulum tear which is a tear to the tissue between the lips and gums. Additionally, the child presented with a bulging fontanelle, the soft spot on top of the head. The bulging indicated that there was

increase[d] pressure in the fluid around the brain or in the brain itself. After several tests including a [CAT] scan, MRI, and x-rays, the child was diagnosed with a subdural hemorrhage, bilateral retinal hemorrhages and a frenulum tear. Furthermore, the child required neurosurgery to relieve the pressure in his brain. Moreover, the child had a drain placed into his head. The drain was necessary to help alleviate the pressure to the brain and to enable the brain to heal.

Dr. McColgan testified that the injuries may have been the result of one incident or multiple incidents. There were indications that the child had symptoms prior to September 15, 2016. On September 10, 2016, the child was taken to Einstein [H]ospital because he was vomiting and not feeding well.[11] Vomiting is a symptom of increased pressure in the head. Dr. McColgan was concerned that the previous episode of vomiting was caused by the pressure to the brain since there was no other medical reason to explain it. At SCHC, the child continued to suffer episodes of vomiting. Dr. McColgan testified that additional testing was ordered to determine if there were any underlying medical reasons for the brain injury. The results were negative – there were no underlying medical reasons for the brain injury. Additionally, the doctor testified that the injuries were NOT the result of accidental trauma. The doctor concluded that the injuries were the result of child abuse.

The DHS investigative worker testified that on September 15, 2016 the mother took the child to the home of his maternal uncle. The mother and father were working and the uncle's paramour was babysitting. The maternal uncle, his paramour, and the paramour's mother were present in the home. The mother placed the child on a bed. She informed the paramour that the child was asleep and the mother left. Approximately ninety minutes later, the paramour went to feed the child. The child was crying,

_____

[11] There is conflicting evidence as to the date Child was taken to Einstein Hospital; however, it appears it was somewhere between September 10 and September 12.

appeared limp and very pale. The paramedics arrived and transported the child to the hospital. The DHS investigative worker stated that throughout the investigation the paramour, the maternal uncle and the paramour's mother were cooperative with her and consistent with their statements. Furthermore, the paramour, the uncle and the paramour's mother testified at the dependency hearing and their statements were consistent with those previously given to the DHS worker.

The DHS worker testified that the mother and father made inconsistent statements throughout the investigation. The mother and father were inconsistent regarding the number of caregivers for the child, the timeline for the admission to Einstein Hospital and their recollection of events. Furthermore, the mother and the father denied having other children to the DHS social worker. The DHS worker learned that the father has adult children and the mother has three other children. Moreover, on June 11, 2012 the mother had her [parental] rights terminated for two of her children. On May 5, 2014, the mother had her parental rights terminated for the third child.[12] The DHS investigation concluded that the perpetrators of the child abuse were the mother and father.

1925(a) Op. at 2-4 (unpaginated) (citations to record omitted).

Upon careful review of the record, we conclude that the trial court considered all the testimony and that the evidence supports the trial court's finding of dependency. We further conclude that the trial court did not abuse its discretion when it adjudicated Child dependent.

Next, we address the trial court's finding of aggravated circumstances. Mother's brief challenges the trial court's determination of "child abuse" under section 6303. However, the trial court's orders did not include such a

_____

[12] *See* DHS Exhibit 1.

finding. *See supra* n.7. Mother did not challenge a finding of aggravated circumstances due to physical abuse. Accordingly, Mother has waived a challenge to the finding of aggravated circumstances. Further, even if we were to construe Mother's challenge to the finding of "child abuse" as a challenge to the trial court's finding of aggravated circumstances based on physical abuse, we would conclude it lacks merit .[13]

Pursuant to 42 Pa.C.S. § 6341(c.1):

> **(c.1) Aggravated circumstances.--**If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child is dependent, the court shall also determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made

_____

[13] Mother also contends that the trial court failed to provide her with notice, in violation of due process, with regard to the finding of aggravated circumstances as to prior terminations of parental rights. Mother's Br. at 5. Mother states,

> In his opinion, the trial judge found that aggravated circumstances for the mother occurred because of child abuse and past terminations of parental rights. The notice given to the mother only cites child abuse as the reason for the determination of aggravated circumstances. Therefore[,] the notice issued to the mother is deficient and violates due process.

*Id.* at 5. We conclude this claim lacks merit. The order found aggravated circumstances based on physical abuse. As discussed above, the finding of aggravated circumstances due to physical abuse is supported by the record.

and schedule a hearing as required in section 6351(e)(3) (relating to disposition of dependent child).

"Aggravated circumstances" are defined by 42 Pa.C.S. § 6302, in part, as:

Any of the following circumstances:

. . .

(2)     The child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by a parent.

. . .

(5)     The parental rights of the parent have been involuntarily terminated with respect to a child of the parent."

42 Pa.C.S. § 6302.   In turn, "serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ."   *Id.*   Further, "aggravated physical neglect" is defined as "[a]ny omission in the care of a child which results in a life-threatening condition or seriously impairs the child's functioning."   *Id.*

Moreover, as we stated in *In re R.P.*: "The court need not find the existence of aggravated circumstances as to a particular party; rather, it merely must determine whether they are present in the case.   This is so . . . because the focus is not on the rights of the [p]arents; instead, the children's safety, permanence, and well-being take precedence."   957 A.2d 1205, 1219 (Pa.Super. 2008).

In supporting the finding of aggravated circumstances the trial court stated "due to the extensive injuries and physical trauma to the child – the Trial Court found that aggravated circumstances . . . exist to the mother and father." 1925(a) Op. at 5 (unpaginated).

The evidence discussed above, including that the medical expert opined that Child suffered "inflicted traumatic brain injury or physical abuse," N.T., 2/10/17, at 11, 36, requiring neurosurgery and the placement of a drain to relieve the pressure on the brain, *id.* at 9, 11-12, supports a finding of aggravated circumstances based upon physical abuse to Child. *See* 42 Pa.C.S. § 6302. We conclude the trial court did not abuse its discretion in finding aggravated circumstances.

Orders affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/10/2017