J-S23029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: T.J.P., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.P., NATURAL MOTHER, | |
| Appellant | No. 3257 EDA 2014 |

Appeal from the Decree Entered October 15, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000213-2014, CP-51-DP-0002117-2012

BEFORE:  DONOHUE, SHOGAN, and STRASSBURGER,* JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 07, 2015**

D.P. ("Mother") appeals from the decree entered on October 15, 2014, which granted the petition filed by the Philadelphia County Department of Human Services ("DHS" or "the Agency"), seeking to involuntarily terminate Mother's parental rights to T.J.P. ("Child"), a daughter born in November of 2012, pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and changed Child's permanency goal to adoption pursuant to 42 Pa.C.S. § 6351(f).[1]  We affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] On October 15, 2014, the trial court entered decrees involuntarily terminating the parental rights of Child's father, C.T.  Father has not filed a notice of appeal from the decree terminating his parental rights, nor is he a party to the instant appeal.

The trial court set forth the factual background and procedural history of this appeal as follows:

On November 26, 2012, [DHS] received a General Protective Services Report (GPS) due to [M]other testing positive for drugs during the birth of [Child]. The report indicated that [M]other made statements to the Temple University hospital staff indicating that she abused drugs during her pregnancy with [Child]. [M]other did not receive any drug and alcohol treatment. DHS learned that [M]other was not prepared to care for [Child]. [Child's] father, [C.T.], was not involved in [Child's] care. The report was substantiated by the DHS investigation.

On November 26, 2012, DHS visited [Child] and [M]other at Temple University Hospital. Mother admitted to [the] DHS worker she had been transient throughout her pregnancy with [Child]. [M]other has no viable income. [M]other stated [that] she and [Child] would reside at [Child's] maternal grandparent's home. However, the maternal grandparent's home lacked heat and was subject to foreclosure.

On November 26, 2014, [M]other was discharged from Temple University Hospital.

DHS learned from the Temple University Hospital staff that [M]other did not receive adequate prenatal care[.]

On November 27, 2012, DHS made a scheduled visit to [M]other's home. [The] DHS worker met with [M]other and her paramour. DHS observed decaying building materials on the front porch of the home. The front porch was unstable and poorly framed. Furthermore, the home had missing windows and cardboard frames at the window and lacked heat.

On November 27, 2012[,] DHS left a telephone message for [C.T.], father of [Child,] requesting [him to] contact DHS.

On November 27, 20[1]2, DHS obtained an Order of Protective Custody (OPC) for [Child,] who was transported from Temple University Hospital to a foster home through the agency Asociacion de Puertorriquenos en Marcha (APM)[.]

On November 29, 2012, a shelter care hearing was held for [Child]. The [c]ourt lifted the OPC and ordered that [C]hild be temporarily committed to DHS to stand. [M]other was referred to the Clinical Evaluation Unit (CEU) for a forthwith drug screen and a dual diagnosis assessment. Father was not present at the hearing.

On December 14, 2012[,] a Family Service Plan (FSP) meeting was held by the Department of Human Services. The Family Service Plan objectives for the parents were (1) to locate and occupy suitable housing; (2) maintain visitation and contact with [C]hild; (3) participate in an evaluation for drug and alcohol abuse; [and] (4) attend drug and alcohol treatment on a consistent basis. The parents did not participate in the meeting.

On December 19, 2012, an adjudicatory hearing was held. The Honorable Jonathan Q. Irvine adjudicated [Child] dependent and committed [C]hild to DHS. The [c]ourt specifically ordered that the father attend the Clinical Evaluation Unit (CEU) for a forthwith drug screen/evaluation, dual diagnosis and monitoring. The [c]ourt further ordered [M]other to continue to comply with the CEU recommendations.

On March 20, 2013[,] a permanency review hearing was held. [M]other was re-referred to the CEU for a forthwith drug screen, assessment, monitoring and 3 random drug screens prior to the next court hearing.

On April 1, 2013[, Child] was placed in another foster home through APM.

On June 19, 2013, a permanency review hearing was held. [M]other was referred for an intake appointment at Sobriety through Outpatient (STOP) on March 14, 2013[.]

On December 13, 2013, DHS received a GPS report alleging that [M]other admitted to using marijuana approximately 3 to 4 months prior to the birth of [Child's] sibling, [A.]. Furthermore, [M]other suffered from depression. The report was substantiated.

On March 27, 2014, the last FSP meeting was held. [Child's] goal was changed to adoption. The parental objectives were the following: (1) [M]other will locate and occupy suitable housing;

(2) [M]other and [F]ather will maintain visitation and contact with [C]hild; (3) [M]other will participate in an evaluation for drug and alcohol abuse and (4) [M]other will attend drug and alcohol on a consistent basis. [M]other and [F]ather were not present for the FSP meeting.

The matter was then listed on a regular basis before Judges of the Philadelphia Court of Common Pleas-Family Court Division-Juvenile Branch pursuant to Section 6351 of the Juvenile Act, 42 Pa.C.S.A. §6351 and evaluated for the purpose of determining or reviewing the permanency plan of [C]hild with the goal of reunification of the family.

[S]ubsequent hearings . . . reflect the [c]ourt's review and disposition as a result of evidence presented addressing the lack of compliance with drug/alcohol.

Trial Court Opinion, 12/15/14, at 1-3 (unpaginated).

On May 6, 2014, DHS filed a petition for the involuntary termination of the parental rights of Mother and Father, seeking to terminate their parental rights pursuant to section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, and a petition to change Child's permanency goal to adoption, pursuant to section 6351 of the Juvenile Act. On May 16, 2014, the trial court held an evidentiary hearing on the petitions. N.T., 10/15/14, at 6. The trial court granted the termination petition as to Father, but held the matter under advisement until it could complete the hearing with regard to Mother. *Id*. at 6, 40-41. The trial court removed Mother's first counsel, and appointed new counsel to represent her. *Id*. at 6.

On October 15, 2014, the trial court held an evidentiary hearing on the termination and goal-change petitions. At the hearing, DHS presented the testimony of the DHS social worker assigned to the family, Bessie Lee. *Id*.

at 5-8. Further, counsel for the parties stipulated that the content of Ms. Lee's testimony would be in conformity with the statement of facts in the termination petition. *Id*. at 7, 39-40. Attorney Heather Hulit, the Child Advocate, presented the testimony of Shadae Seward, the foster care case manager for APM, who supervised the weekly visits between Child and Mother since July of 2014. *Id*. at 5, 26. Mother did not attend the hearing, but her counsel was present, and represented Mother through making objections to the testimony and cross-examining the witnesses.

The trial court found by clear and convincing evidence that Mother's parental rights to Child should be terminated pursuant to section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act. Further, the court held it was in the best interest of Child to change her permanency goal to adoption pursuant to section 6351 of the Juvenile Act.

On November 14, 2014, Mother filed a notice of appeal along with a concise statement of errors complained of on appeal.[2] On appeal, Mother raises the following issues:

---

[2] Mother filed a Preliminary Statement of Matters Complained of on Appeal, indicating her intention to file an amended statement of errors complained of on appeal upon her receipt of the transcript, and requesting the trial court's permission to do so. The trial court's docket does not reflect that the trial court granted such permission, or that Mother filed an amended statement of errors complained of on appeal.

1) Did the lower Court err and/or abuse its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa.C.S.A. § 2511(a)(1)?

2) Did the lower Court err and/or abuse its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa.C.S.A. § 2511(a)(2)?

3) Did the lower court err and/or abuse its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa.C.S.A. § 2511(a)(5)?

4) Did the lower Court err and/or abuse its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa.C.S.A. § 2511(a)(8)?

5) Did the lower Court err and/or abuse its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa.C.S.A. § 2511(b)?

Mother's Brief at 6.[3]

Mother argues that the trial court erred in terminating her parental rights because DHS failed to present clear and convincing evidence supporting termination. *See* Mother's Brief, at 9-10. Mother asserts that she completed some of her FSP objectives and was actively addressing the

_____

[3] In her statement of questions involved in her brief, Mother did not raise the issue of the change of Child's permanency goal to adoption. Accordingly, she has waived any challenge to the goal change to adoption. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's statement of questions involved and concise statement is deemed waived). Moreover, Mother did not frame the issues set forth in her statement-of-questions-involved portion of her brief in a fashion identical with her concise statement of errors complained of on appeal. However, we find that Mother preserved for this Court's review the issues related to termination by stating that she was challenging the sufficiency of the evidence to support the termination of her parental rights to Child.

objective of drug and alcohol treatment at an in-patient rehabilitation and treatment facility. *Id*. Mother also claims that she had been moderately successful in addressing her dependency on drugs earlier in the history of the case, prior to a relapse in drug use. *Id*. at 9. Mother asserts that she was aware of the importance of sobriety in addressing her housing needs. *Id*. Moreover, Mother claims that her outstanding objectives of drug treatment for marijuana use and obtaining appropriate housing were connected, in that Mother would be able to utilize specific housing services after she attained six months of sobriety. *Id*. at 10. Mother alleges that she remained sober for at least three months while she was addressing her substance-abuse needs at an in-patient treatment facility.

Additionally, Mother asserts that Ms. Seward testified that the termination of Mother's parental rights could have long-term harmful effects on Child. *Id.* Mother suggests that Child could have remained in foster care where foster parent meet Child's daily needs while Mother continued to address Mother's own substance-abuse and housing objectives.

In reviewing an appeal from the termination of parental rights, we review the appeal in accordance with the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial

court made an error of law or abused its discretion. *Id*.; *R.I.S.*, [614 Pa. 275, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id*.; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id*.

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id*. (*quoting In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

Although Mother's first four issues challenge the trial court's determinations regarding termination of her parental rights under various subsections of section 2511(a), this Court may affirm the trial court's decision regarding the termination of parental rights with regard to any singular subsection of section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Instantly, the trial court terminated Mother's parental rights under subsections 2511(a)(1), (2), (5), (8) and (b). We will focus on section 2511(a)(2) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.  *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.  *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

Our Supreme Court set forth our inquiry under section 2511(a)(2) as follows:

> As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."  If and only if grounds for termination are established under subsection (a), does a court consider "the developmental, physical and emotional needs and welfare of the child" under § 2511(b).

This Court has addressed incapacity sufficient for termination under § 2511(a)(2):

> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.
>
> *In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883, 891 (Pa. 1986) (*quoting In re: William L.*, 477 Pa. 322, 383 A.2d 1228, 1239 (Pa. 1978)).

*Adoption of S.P.*, 47 A.3d at 827.

This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.*, 797 A.2d at 337. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id*. at 340.

The trial court explained its decision to terminate Mother's parental rights under section 2511(a)(2) as follows:

> It is clear from the record that[,] for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, [M]other failed to perform any parental duties for [Child]. The Court found by clear and convincing evidence that [M]other failed to perform her parental duties. The testimony established that [M]other tested positive for marijuana during the birth of [Child] in November 2012. (N.T. 10/15/14, pg. 8) Furthermore, [M]other admitted to DHS that she had abused illegal drugs during her pregnancy. (N.T. 10/15/14, pg. 8)

A parent has an affirmative obligation to act in his child's best interest. As stated in **Adoption of Hamilton**, 379 Pa. Super at 274, 59 A.2d at 1291, "to be legally significant, the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child [relationship], and must demonstrate a willingness and capacity to under[]take the parental role.["] **In re E.S.M.**[,] 424 Pa. Super[.] at 296.

In the instant matter, [C]hild has been in care for over twenty-three months. (N.T. 10/15/14, pgs[.] 7-8) The testimony revealed that [M]other failed to inquire about the developmental growth and needs of [Child]. Furthermore, [M]other failed to attend scheduled doctor's visits[.] (N.T. 10/15/14[,] pg. 15) Additionally, the testimony established that [C]hild is in a stable environment and adoption was in the best interest of [C]hild. (N.T. 10/15/14, pgs. 79, 81-82, 85) Moreover, [M]other has made minimal effort to receive treatment for her drug/alcohol issues. (N.T. 10/15/14, pgs. 10, 16-18) Lastly, the testimony of the social worker indicated that [M]other's drug/alcohol addiction and failure to stabilize her drugs issues were contributing to her lack of housing. (N.T. 10/15/14, pgs. 21-22) [M]other failed to be drug free for a period of six months, therefore rendering her ineligible for a housing program[.] (N.T. 10[/]15/14[,] pg. 16)

Section 2511 (a) (2) requires that "repeated and continued incapacity, abuse neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well[-]being and the condition and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.["] 23 Pa.C.S.A. § 2511 (a)(2). These grounds are not limited to affirmative misconduct. They may include acts of refusal to perform parental duties but more specifically on the needs of the child. **Adoption of C.A.W.**, 683 A.2d 911, 914 (Pa. Super. 1996)[.]

Courts have further held that the implications of a parent's limited success with services geared to remedy the barriers to effective parenting can also satisfy the requirements of § 2511(a)(2). [In] **In the matter of B.L.W**., 843 A.2d 380 (Pa. Super. 2004), the [c]ourt's grave concerns about [the m]other's ability to provide the level of protection, security and stability"

- 12 -

that her child needed was sufficient to warrant termination. *Id*. at 388.

The testimony indicated that [M]other's lack of parenting skills were an issue in the instant matter. (N.T. 10/15/14, pgs. 21-22) Furthermore, the testimony revealed mother lacked the basic parenting skills, i.e., timing of diaper changes for [Child]. (N.T. 10/15/14[, pg. 24, 26]) Additionally, [M]other failed to learn when to feed [Child]. (N.T. 10/15/14, pgs. 24-25, 29) The social worker's concern arose from [M]other's failure to learn the parenting skills after a year of instruction during supervised visits. (N.T. 10/15/14, pgs. 24-25, 29). [M]other has been abusing drugs/alcohol for approximately four years. (N.T. 10/15/14, pgs. 93-94) Lastly, the testimony of the foster care case manager reiterated [M]other's struggle with parenting skills. (N.T. 10/15/14, pg. 29)

Trial Court Opinion, 12/15/14, at 4-5 (unpaginated).

There is ample, competent, clear, and convincing evidence in the record to support the trial court's determination that Mother has not demonstrated any ability to remedy the circumstances which led to Child's placement, nor is there any indication that Mother could remedy such circumstances in the foreseeable future, even with continued services in place. After a careful review of the record, we conclude that the trial court aptly discussed the evidence pertaining to the requirements of section 2511(a)(2). We will not impose our own credibility determinations and re-weigh the evidence. We must defer to the trial judge's determination, as the factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *Adoption of S.P.*, 47 A.3d at 826-827.

After we determine that the requirements of section 2511(a) are satisfied, we proceed to review whether the requirements of section 2511(b) are satisfied. *In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but pursuant to section 2511(b) the focus is on the child. *Id*. at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently explained as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

We have stated that in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care

- 14 -

for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008).

Mother argues that the testimony demonstrated that Child recognized Mother as her parent and that she had a bond with Mother. Mother's Brief at 10. Mother also contends that Mother, her paramour, and one of Child's siblings visited Child as a family unit, which provided an opportunity for the family to eat, play, and bond. *Id*. Additionally, Mother asserts that Ms. Seward testified that there was a possibility of long-term harm to Child from severing her bond with Mother.

The trial court explained its decision to terminate Mother's parental rights under section 2511(b) as follows:

> In order to terminate the parental rights, the party seeking termination must prove by clear and convincing evidence that the termination is in the best interest of the child. 23 Pa.C.S.A. §2511(b); *In re Bowman*, 436 Pa. Super. [___], 647 A.2d 217 (1994)[.] The best interest of the child is determined after consideration of the needs and welfare of the child. The trial court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights to determine if the evidence in light of the totality of the circumstances clearly warrants involuntary termination.
>
> When determining the best interest of a child, many factors are to be analyzed, "such as love, comfort, security and stability.["] *In re Adoption of T.B.B.*, 787 A.2d 1007, 1013-1014 (Pa. Super. 2003) Another factor that a court is to consider is what, if any, bond exists for the child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.*, (839 A.2d 410, 415 (Pa. Super. 2003)[.]
>
> Under Section 2511(b), the court must consider whether the child's needs and welfare will be met by termination. *In re C.P.*,

901 A.2d 516 (Pa. Super. 2006). "Intangibles such as love, comfort, security and stability are involved when inquiring about [t]he needs and welfare of the child." *Id.* [a]t 520. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing and necessary beneficial relationship." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010)[.]

"It is universally agreed that the bond of parental affection is unique and irreplaceable. When parents act in accordance with the natural bonds of parental affection, preservation of the parent-child bond is **prima facie** in the best interest of the child, and the state has no justification to terminate that bond. On the other hand, a court may properly terminate parental bonds which exist **in form** but not **in substance** when preservation of the parental bond would consign a child to an indefinite, unhappy, and unstable future devoid of the irreducible minimum parental care to which that child is entitled."

*In re Diaz*, 669 A.2d 372, 377 (Pa. Super. 1995) (quoting *In re J.W.*, 578 A.2d 952, 958 (Pa. Super[.] 1990) [(emphasis in original)].

In the instant matter, the testimony established that [C]hild would not suffer any irreparable emotional harm if [M]other's parental rights were terminated. (N.T. 10/15/14, pg. 28) [C]hild has bonded with her foster parent. (N.T. 10/15/14, pg. 28, 32) Additionally, the testimony described the relationship between [C]hild and her foster parent as strong and loving. (N.T. 10/15/14, pgs. 8, 16, 28) Furthermore, the social worker testified that adoption is in [Child's] best interest. (N.T. 10/15/14[,] pg. 11)

As explained in [the] initial Order, the [t]rial [c]ourt found by clear and convincing evidence that the Department of Human Services met their statutory burden pursuant to 23 Pa.C.S.A. §2511(a) (1) (2) (5) and (8) and §2511 (b) and that it was in the best interest of [C]hild to change the goal to adoption for permanency. (N.T. 10/15/14, pg. 11) The testimony was uncontroverted. (N.T. 10/15/14, pg. 40) The social worker testified credibly. (N.T. 10/15/14, pg. 40)

* * *

- 16 -

> For the preceding reasons, the court finds that DHS met its statutory burden by clear and convincing evidence regarding the termination of parental rights pursuant to 23 Pa.C.S.A. §2511. Furthermore, the court finds that its ruling will not cause [Child] to suffer irreparable harm[,] and it is in the best interest of [C]hild as a result of testimony regarding [C]hild's safety, protection, mental, physical and moral welfare to terminate [M]other's parental rights.

Trial Court Opinion, 12/15/14, at 5-6 (unpaginated).

There is ample, competent, clear, and convincing evidence in the record to support the trial court's finding that Child's foster parent meets all of Child's needs and welfare, and that Child's best interests will be served by terminating Mother's parental rights. Ms. Lee testified that Child has been in foster care for virtually her entire life. N.T., 10/15/14, at 7-8. Ms. Lee stated that Child has a strong bond with her pre-adoptive foster parent, and that the foster parent meets all of Child's needs. *Id*. at 10-11. Ms. Lee also testified that adoption is in Child's best interests. *Id*. at 11. Ms. Lee opined that there would be no detriment to Child if Mother's parental rights were terminated. *Id*. Ms. Lee stated that, although Child has a relationship with Mother, it is on a visitation level, as opposed to her relationship with her foster parent, which is on the parental level. *Id*. at 11-12.

Ms. Seward testified that Child has a great relationship with her foster parent, from whom Child receives love and care. *Id*. at 28. Ms. Seward opined that, if Child were removed from the care of her foster parent, given the length of time Child has been in foster care with her current foster

parent, Child would suffer harm. *Id*. Ms. Seward also opined that Child would not suffer harm if visits with Mother were stopped. *Id*. On cross-examination by Mother's counsel, Ms. Seward indicated that she was unsure how Child would react in the future from not knowing or seeing her biological mother. *Id*. at 31. Ms. Seward reiterated this response on re-direct examination by the child advocate. *Id*. at 34-35.

While Mother may love Child, a parent's own feelings of love and affection for a child, alone, will not preclude the termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id*. at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

The competent evidence in the record supports the trial court's determination that, although Child has a relationship with Mother, Child would not suffer any certain harm from the termination of Mother's parental rights. *Id*. at 11-12, 28, 31, 34-35. The competent evidence in the record also supports the trial court's finding that the termination of Mother's parental rights would serve Child's best interests. *Id*. at 11. *See T.S.M.*,

71 A.3d at 267 (reiterating that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition). Thus, we will not disturb the trial court's decision. ***Adoption of S.P.***, 47 A.3d at 826-827.

Accordingly, we affirm the decree terminating Mother's parental rights to Child pursuant to section 2511(a)(2) and (b) of the Adoption Act, and changing Child's permanency goal to adoption pursuant to section 6351 of the Juvenile Act.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/7/2015