J-S25044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF: H.R.B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.A.B., MOTHER | No. 1834 WDA 2015 |

Appeal from the Order entered October 21, 2015,
in the Court of Common Pleas of Erie County, Orphans'
Court, at No(s): 56 in Adoption 2014

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF: D.R.B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.A.B., MOTHER | No. 1835 WDA 2015 |

Appeal from the Decree entered October 21, 2015,
in the Court of Common Pleas of Erie County, Orphans'
Court, at No(s): 56A in Adoption 2014

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF: R.J.B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.A.B., MOTHER | No. 1836 WDA 2015 |

Appeal from the Decree entered October 21, 2015,
in the Court of Common Pleas of Erie County, Orphans'
Court, at No(s): 56B in Adoption 2014

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF: B.G.B., A/K/A M.B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.A.B., MOTHER | No. 1837 WDA 2015 |

Appeal from the Decree entered October 21, 2015,
in the Court of Common Pleas of Erie County, Orphans'
Court, at No(s): 56C in Adoption 2014

BEFORE: FORD ELLIOTT, P.J.E., MUNDY, and JENKINS, JJ.

MEMORANDUM BY JENKINS, J.:                    **FILED JULY 26, 2016**

Appellant, M.A.B. ("Mother"), appeals from the October 21, 2015 decrees involuntarily terminating her parental rights to her children, H.R.B., born July of 2012; D.R.B., born October of 2007; R.J.B., III, born September of 2005; and B.G.B.[1], born October of 2004 (collectively, "Children").[2] We affirm.[3]

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case, which we incorporate herein. On September 2, 2014, Erie County Office of Children and Youth ("OCY") filed petitions for involuntary termination of parental rights of Mother to Children. On March 6, 2015, March 31, 2015, and May 6, 2015, the trial court held hearings on those petitions. Of particular importance, the trial court heard the testimony of Kenneth Parmerter, an OCY caseworker; Alyssa Beer, an OCY supervisor; Kim Covatto, a permanency unit OCY caseworker; and Mother.[4] On October 20, 2015, the trial court terminated Mother's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b).

---

[1] B.G.B. is also known as M.B.

[2] The parental rights of R.J.B., Jr. ("Father") to Children were also terminated involuntarily pursuant to these decrees. Father is not a party to the instant appeals nor has he filed separate appeals.

[3] On December 10, 2015, this Court consolidated these appeals.

[4] Additionally, the trial court heard testimony from Shawn Wills, a Millcreek Township police officer; Cory Suchland, an investigator with Auglaize

On November 20, 2015, Mother timely filed notices of appeal, together with concise statements of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Mother raises four questions on appeal:

1. Did the [trial court] commit an abuse of discretion or error of law when it concluded that [OCY] established the grounds for termination under 23 Pa.C.S.[] § 2511(a)(1)?

2. Did the [trial court] commit an abuse of discretion or error of law when it concluded that [OCY] established sufficient grounds for termination under Pa.C.S.[] § 2511(a)(2)?

3. Did the [trial court] commit an abuse of discretion or error of law when it concluded that [OCY] established sufficient grounds for termination under Pa.C.S.[] § 2511(a)(5)?

4. Did the [trial court] commit an abuse of discretion or error of law when it concluded that termination of [Mother's] parental rights was in the [Children's] best interest?

Mother's brief at 48, 53, 58, 60-61.

Our standard of review regarding orders terminating parental rights is as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily

_____

County, OH, Children's Services; T.H., Children's Foster Mother; Nora Lynn Kreider, a licensed marriage and family therapist; Alicia Twilla, a therapist; B.G.B.; R.J.B. III; Sara Dieringer, a community support provider for the Family Resource Center in St. Marys, OH; Jeanne Homan, a mental health and drug and alcohol counselor at Coleman Behavioral Health in St. Marys, OH; and Shannon Marabella, a mental health intern at Maryhaven Mental Health Center.

terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005) (quoting *In re C.S.*, 761 A.2d 1197, 1199 (Pa. Super. 2000)). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *Id.* at 806. We have previously stated the standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (quoting *In re Diaz*, 669 A.2d 372, 375 (Pa. Super. 1995)). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003) (quoting *In re: N.C., N.E.C.*, 763 A.2d 913, 917 (Pa. Super. 2000)). Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in

order to affirm the termination of parental rights." ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004).

In terminating Mother's parental rights, the trial court relied upon, *inter alia*, Sections 2511(a)(2) and (b) of the Adoption Act, which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

With respect to Section 2511(a)(2), the grounds for termination of parental rights due to parental incapacity that cannot be remedied are not

limited to affirmative misconduct; "to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002). Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *Id.* at 340. A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008). Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

On appeal, Mother argues that OCY cannot establish, by clear and convincing evidence, that she cannot or will not remedy the conditions that led to Children's placement. In her brief, Mother argues that, while OCY alleged that it had concerns about Mother's drug and alcohol use, it presented no evidence to substantiate this concern. Mother's Brief at 55. Mother also argues that she has participated in her own therapy. *Id.* at 57.

At the hearing, Mr. Parmerter testified that Mother has made minimal progress toward alleviating the circumstances which necessitated the original placement, and that Mother has been minimally compliant with the permanency plan. N.T., 3/6/15 at 50. Additionally, Mr. Parmerter testified

that Mother did not seek out services until about 60 days into the 90-day review period.[5] *Id*. at 87. Mr. Parmerter testified that Mother only visited Children twice during the three-month review period. *Id*. at 52.

Ms. Beer testified that she began her attempts to contact Mother via telephone on October 7, 2013, and that Mother finally returned Ms. Beer's phone calls on January 21, 2014. *Id*. at 106. Ms. Beer testified that, when questioned why Mother did not contact OCY before that date, Mother responded that she did not have a good answer to that question. *Id*. at 107. Ms. Beer testified she stressed to Mother the importance of maintaining contact with Children, as well as with OCY. *Id*. at 110. Ms. Beer testified that her next telephone conversation with Mother occurred on March 7, 2014, and that Mother informed Ms. Beer that she was pregnant and was due to give birth on March 20, 2014. Ms. Beer's final phone call with Mother occurred on April 21, 2014. *Id*. at 115. Ms. Beer testified that Mother told Ms. Beer that she was unaware that she was required to maintain contact with OCY regarding Children. *Id*. at 117. Ms. Beer testified that she had no further contact with Mother. *Id*. at 118. The trial court found that OCY sustained its burden of proof in terminating Mother's

---

[5] The trial court ordered Mother to: (1) participate in a psychological evaluation; (2) submit to a drug and alcohol evaluation; (3) complete an OCY-approved parenting class; (4) complete an OCY-approved domestic violence class; (5) obtain safe and stable housing; (6) obtain employment; and (7) attend appointments and be actively involved in the lives of Children. N.T., 3/6/15 at 43. OCY offered these services and made referrals for Mother. *Id.* at 47-48.

- 7 -

parental rights pursuant to Section 2511(a)(2). Trial Court Opinion, 10/20/15, at 44. The trial court noted that Mother's "behaviors, her inaction, and her limp explanations to OCY representatives and the [trial] court illustrate [M]other's incapacities to parent cannot or will not be remedied by [M]other." *Id.* at 45. The trial court found that Mother demonstrated incapacity, abuse, neglect and refusal with regard to Children. *Id.* The trial court also found that Mother's "incapacity to follow through with court ordered services, and her incapacity to engage in services and comply with the reunification orders in a substantial, consistent, and meaningful way to achieve reunification with [Children]" illustrates the lack of a diligent effort to assume full parental responsibilities. *Id.*

This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340. Instantly, the evidence showed that Mother has made only a minimal effort to maintain any type of relationship with Children. Trial Court Opinion, 10/20/15, at 43. The evidence also demonstrated that Mother's continued incapacity, abuse, neglect or refusal to parent could not or would not be remedied, despite OCY's offering of reasonable efforts to assist in her reunification with Children.

After our careful review of the record in this matter, we find that the trial court's credibility and weight determinations are supported by competent evidence in the record. *In re M.G.*, 855 A.2d at 73-74. Accordingly, we find that the trial court's determinations regarding section 2511(a)(2) are supported by sufficient, competent evidence in the record.

The trial court must also consider how terminating Mother's parental rights would affect the needs and welfare of Child pursuant to 23 Pa.C.S. § 2511(b). Pursuant to section 2511(b), the trial court's inquiry is specifically directed to a consideration of whether termination of parental rights would best serve the developmental, physical and emotional needs of the child. *See In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005), *appeal denied*, 587 Pa. 705, 897 A.2d 1183 (2006). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). We have instructed that the court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *See id.*

In her brief, Mother argues that OCY did not prove by clear and convincing evidence that she could not provide a stable home environment at the present time, or in the near future. Mother states that she would characterize her relationship with Children as "good." Mother's Brief at 61. Mother further argues that OCY has not demonstrated that Mother and

Children could not build a stable relationship through family therapy, and that testimony from both therapists involved indicates that parental involvement and input would have been therapeutically beneficial. *Id.* at 62.

The trial court found that termination of Mother's parental rights will promote stability for Children and is in the best interest of Children. Trial Court Opinion, 10/20/15, at 49. Children have not had any contact with Mother since late July 2014. *Id.* Children have not inquired about Mother. *Id.* All Children are placed in the same foster home. *Id.* at 48. B.G.B. and R.J.B. refer to their Foster Mother as their "mom," and do not want to return to the care of Mother. *Id.* Moreover, the trial court found that Children are doing well and are happy in foster care. *Id.* at 49.

Mr. Parmerter testified that R.B.J., III, was standoffish during the visit with Mother that took place on June 14, 2014, the first time Mother had seen Children since September of 2013. N.T., 3/6/15, at 54. Mr. Parmerter testified that he recommended a goal change to adoption because Children were scared to return to Mother's care, and that Children were getting settled into their foster home, were doing well in school, and were receiving the services they needed. *Id.* at 55-56. Mr. Parmerter further testified that Children were progressing well in their foster home, and enjoyed being in the foster home, and that their needs were being met in the foster home. *Id.* at 64.

Ms. Covatto testified that Children are doing well in the foster home. N.T., 3/6/15, at 134. Ms. Covatto further testified that Children are very angry with Mother and do not wish to return to Mother's care. *Id.* at 137. In particular, Ms. Covatto testified that B.G.B. and R.J.B., III, stated that they hate Mother and were very upset at the thought of returning to Mother's care. *Id.* at 140. Ms. Covatto testified that Children enjoy that they have a constant home that is not a car or a hotel. *Id.* Ms. Covatto concluded that Children would feel more at ease if Mother's parental rights were terminated because they would not fear instability any more. *Id.*

We have stated that, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008). After this Court's careful review of the record, we find that the competent evidence in the record supports the trial court's determination that there was no bond between Mother and Children which, if severed, would be detrimental to Children, and that the termination of Mother's parental rights would best serve the needs and welfare of Children. Thus, we will not disturb the trial court's determinations. *See In re M.G.*, 855 A.2d at 73-74.

After a careful review, we affirm the decrees terminating Mother's parental rights on the basis of section 2511(a)(2) and (b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2016